IN RE RAFAEL R. FUERTES, Respondent.

No. 102. Decided September 13, 1961.

*Gabriel de la Haba, Alberto Picó, José A. Suro,* and *Francisco Torres Aguiar* for respondent. *J. B. Fernández Badillo, Attorney General,* and *Rodolfo Cruz Contreras, Assistant Attorney General,* for the People.

PER CURIAM.

By order of this Court of December 11, 1959 entered in this disbarment proceeding, the Attorney General of Puerto Rico filed on January 7, 1960 a complaint of disbarment against Rafael Fuertes, attorney at law, containing the following charges:

"1. Respondent Lic. Rafael R. Fuertes violated the provisions of § 15 of the then Notarial Act, 4 L.P.R.A. § 825, and Canon No. 22 of the Canons of Professional Ethics, in acting as a notary in the execution of deed No. 16 of November 6, 1954 without the witnesses being present, notwithstanding which he set forth therein, falsely, that the same was executed in the presence of the said witnesses.

"2. Respondent Lic. Rafael R. Fuertes observed conduct unbecoming an attorney at law by inducing Lic. Antonio Sandín del Manzano, his subordinate, to violate the provisions of § 15 of the then Notarial Act, 4 L.P.R.A. § 825, by requiring him to sign as witness deed No. 16 of November 6, 1954 in

the presence of respondent, in the execution of which the said Lic. Antonio Sandín del Manzano was not present.

"3. Respondent Lic. Rafael R. Fuertes observed conduct unbecoming an attorney at law in inducing Teresa Biaggi Lugo, respondent's subordinate, to violate the provisions of § 15 of the then Notarial Act, 4 L.P.R.A. § 825, by requiring her to sign as witness deed No. 16 of November 6, 1954, before respondent, in the execution of which the said Teresa Biaggi Lugo was not present.

"4. Respondent violated the provisions of § 17 of the existing Notarial Act, 4 L.P.R.A. § 827, when in acting as notary in the execution of deed No. 16 of November 6, 1954 he left therein blank spaces which were filled in by respondent or by his secretary subsequent to the execution.

"5. Respondent acted as notary in the execution of deed No. 16 of November 6, 1954, in which he was an interested party. In so doing, respondent violated the provisions of § 8 of the Notarial Act then in force, 4 L.P.R.A. § 818, and observed immoral conduct unbecoming an attorney at law.

"6. Respondent violated the oath provided by § 5 of the then Notarial Act, 4 L.P.R.A. § 815, which he took upon entering the practice of his office, and violated Canon No. 22 of the Canons of Professional Ethics and observed immoral conduct unbecoming an attorney at law when, in acting as notary in the execution of deed No. 16 of November 6, 1954, he stated falsely to Artemio Pedrosa, one of the executing parties, that according to an agreement made the obligation secured by the mortgage constituted by the said deed would be for a period of three years, notwithstanding which he set forth therein that it would expire within a period of one year.

"7. Respondent Lic. Rafael R. Fuertes observed conduct unbecoming an attorney at law when, in stating that he was acting on behalf of Lic. Rafael Rodríguez Ema, he required Artemio Pedrosa to pay him $42 as attorney's fees for the said attorney who—according to respondent's statement—was the notary who was going to execute the deed, No. 16 of November 6, 1954 executed before respondent, when the fact is that Rafael Rodríguez Ema was not going to participate, nor did participate in such execution.

"8. Respondent Rafael R. Fuertes charged Artemio Pedrosa usurious interest on a $2,000 loan, thereby committing usury, a

misdemeanor (33 L.P.R.A. § 1751), and observing immoral conduct unbecoming an attorney at law.

"9. Respondent charged Artemio Pedrosa usurious interest on a $300 loan, thereby committing usury, a misdemeanor (33 L.P.R.A. § 1751), and observing immoral conduct unbecoming an attorney at law."

Respondent answered the charges as follows:

"1. Regarding charges Nos. 1, 2, and 3, respondent admits that in the execution of deed No. 16 of November 6, 1954 neither Antonio Sandín del Manzano nor Teresa Biaggi Lugo appeared as witnesses to the said deed, notwithstanding the fact it was set forth therein that they were present; respondent denies the remainder of the allegations contained in those charges, alleging further that his actions in that respect were entirely in good faith and did not prejudice or injure the rights of any person; and, lastly, that on the date the deed was executed the requirement that the witnesses be present was generally considered obsolete and unnecessary to the point that, a few months after the said deed No. 16 was executed, there was introduced Senate Bill 551 which later became Act No. 99 of June 27, 1956 (4 L.P.R.A. § 1013), which expressly provides that the presence of witnesses shall not be necessary in the execution of deeds of the nature of that authorized by respondent.

"2. Regarding charge No. 4, respondent denies that he violated the legal provision referred to therein, alleging on the contrary that the blank spaces which were filled in after the deed was executed were those which it was absolutely necessary to leave in blank.

"3. Respondent denies the allegations in charges Nos. 5, 6, 7, 8, and 9." [1]

By order of May 13, 1960, this Court appointed Judge Federico Tilén to act as Master for the purpose of hearing and receiving the evidence which the parties might wish to submit, of certifying and transmitting the same to this Court with his findings of fact.

---

[1] By order of March 31, 1960 we disposed of the so-called "Special Defenses," among which is that of prescription of the offense of usury. As such we considered them untenable.

Hearings were held before the Master who, after considering the evidence introduced by the parties, a stipulation submitted on certain facts, and the briefs, made the following "Findings of Fact":

"Respondent Rafael R. Fuertes has been an attorney at law and a notary public since 1938, having a commendable professional, religious, and civic record. Artemio Pedrosa had five years of elementary schooling, worked a long time in agriculture and later as an employee in the Department of Agriculture and Commerce. He owned a piece of land of one cuerda in the ward of Monacillos in Río Piedras. The complaint in this case arose as a result of two loans made by the former to the latter and which are object of charges Nos. I to IX.

'I. Respondent Lic. Rafael R. Fuertes violated the provisions of § 15 of the then Notarial Act, 4 L.P.R.A. § 825, and Canon No. 22 of the Canons of Professional Ethics in acting as notary in the execution of deed No. 16 of November 6, 1954 without the witnesses being present, notwithstanding which he set forth therein, falsely, that the same was executed in the presence of the said witnesses.

'II. Respondent Lic. Rafael R. Fuertes observed conduct unbecoming an attorney at law by inducing Lic. Antonio Sandín del Manzano, his subordinate, to violate the provisions of § 15 of the then Notarial Act, 4 L.P.R.A. § 825, by requiring him to sign as witness deed No. 16 of November 6, 1954 in the presence of respondent, in the execution of which the said Lic. Antonio Sandín del Manzano was not present.

'III. Respondent observed conduct unbecoming an attorney at law in inducing Teresa Biaggi Lugo, respondent's subordinate, to violate the provisions of § 15 of the then Notarial Act, 4 L.P.R.A. § 825, by requiring her to sign as witness deed No. 16 of November 6, 1954 before respondent, in the execution of which the said Teresa Biaggi Lugo was not present.'

"Regarding these three charges, the evidence discloses the following:

"In 1954 Fuertes had a capital of one hundred fifty thousand dollars ($150,000) and held the office of Chief of the Legal Division of the Planning Board of Puerto Rico. On November 6 of that year he called at Pedrosa's residence and obtained the signatures of the latter and his wife in the deed which respondent

himself was authorizing—Mortgage Deed to Secure Note to Bearer No. 16, executed November 6, 1961. In that deed respondent, in his capacity of notary, set forth that all the appearing parties and the witnesses signed in one single act, when the fact is that the latter were not present and signed some time subsequent to November 6, 1954.

"The persons appearing as witnesses to the deed were subordinates of respondent and signed at the latter's request. A. Sandín del Manzano was an attorney in the Planning Board and Teresa Biaggi was secretary of the Legal Division of the Board.

'IV. Respondent violated the provisions of § 17 of the existing Notarial Act, 4 L.P.R.A. § 827, when in acting as notary in the execution of deed No. 16 of November 6, 1954, he left therein blank spaces which were filled in by respondent or by his secretary subsequent to the execution.'

"In connection with this charge, the evidence discloses that in the afternoon of November 6, 1954, when the Pedrosa-Berríos spouses signed the mortgage deed before respondent, the spaces corresponding to the number and date of the deed, the day of the month of November, and the maturity year of the note, the number of the affidavit of the note, and the name of the witnesses appeared in blank. See red underscoring in Exhibit 5 of complainant. It has not been established that those spaces were still in blank when the deed was finally executed.

'V. Respondent acted as notary in the execution of deed No. 16 of November 6, 1954 in which he was an interested party. In so doing, respondent violated the provisions of § 8 of the Notarial Act then in force, 4 L.P.R.A. § 818, and observed immoral conduct unbecoming an attorney at law.

'VI. Respondent violated the oath provided by § 5 of the then Notarial Act, 4 L.P.R.A. § 815, which he took upon entering the practice of his office, and violated Canon No. 22 of the Canons of Professional Ethics and observed immoral conduct unbecoming an attorney at law when, in acting as notary in the execution of deed No. 16 of November 6, 1954, he stated falsely to Pedrosa, one of the executing parties, that according to an agreement made the obligation secured by the mortgage constituted by the said deed would be for a period of three years, notwithstanding which he set forth therein that it would expire within a period of one year.'

"The oral evidence introduced in connection with these two charges and the following charges is most conflicting in many

aspects. It has been necessary to make an elaborate analysis of all the details of the evidence in order to form a judgment on the actual situation.

"Pedrosa's financial condition was very precarious and he needed a loan. To that end he asked broker Bernabé Martínez to get him the money. Martínez took him to Lic. Fuertes for the purpose of negotiating the loan. After hesitating, respondent agreed with Pedrosa to lend him two thousand dollars and that the latter pay him three thousand dollars ($3,000), plus 9 per cent interest in the event of delay. It seems that Pedrosa said that the loan would be for three years, but in our opinion the term was not expressly agreed upon. Fuertes asked the broker to call on Rafael Rodríguez Ema for the purpose of setting up the deed.

"On November 6, 1954, when the deed was ready and in view of the fact that Mrs. Berríos Pedrosa was unable to come to San Juan and Rodríguez Ema could not go to Pedrosa's house, and in view of Pedrosa's urgency, Fuertes decided to go to Pedrosa's house to obtain the signatures of the Pedrosa-Berríos spouses. To that end, he asked Rodríguez Ema's office to send him the deed after changing the name of the authorizing notary. In fact, when respondent left his work that afternoon he went to the house of said spouses in the company of Martínez. There Fuertes read the deed aloud. When Pedrosa protested that the expiry date fixed therein ought to be at the end of the year of execution, Fuertes said that instead of earning interest at the end of one year it should be one year and a half and that the loan would be made for three years provided interest thereon was paid after one year and a half had elapsed. To that end, respondent wrote in his own handwriting and signed on the back of a printed receipt the following:

'Nov. 6, 1954.—It is hereby made known that this promissory note shall not earn any interest until one year and a half have elapsed as of the signing hereof or the mortgage property is sold, whichever occurs first. (Sgd.) R. Fuertes.'

"Respondent wrote and signed the same on the back of the mortgage note to bearer signed that afternoon by the Pedrosa-Berríos spouses.

"The deed therefore appears executed before respondent as notary—Exhibit 5 of complainant—and, being a mortgage deed to secure the note to bearer, it was signed only by Artemio Pe-

424

drosa and his wife Inocencia Berríos as executing parties. The money was delivered in cash in that act by respondent himself, without mentioning that the money was not his. During the investigation of these facts by the district attorney, respondent said that the money was not his, but that he could not recall to whom it belonged. At the hearing before us he testified that in 1958 he remembered that the money belonged to his half brother by the mother, Antonio R. Romanacce.

"Considering all the circumstances of this case, we conclude that the money loaned belonged to Fuertes or was in his custody in such way that he could dispose of it freely. Even assuming that the money belonged to his half brother, we observe that the latter was a relative of the notary in the second degree by marriage or blood.

'VII. Respondent Lic. Rafael R. Fuertes observed conduct unbecoming an attorney at law when, in stating that he was acting on behalf of Lic. Rafael Rodríguez Ema, he required Artemio Pedrosa to pay him $42 as attorney's fees for the said attorney who—according to respondent's statement—was the notary who was going to execute the deed, No. 16 of November 6, 1954 executed before respondent, when the fact is that Rafael Rodríguez Ema was not going to participate nor did participate in such execution.'

"In connection with this charge, we conclude that Fuertes charged and received forty-two dollars ($42) for expenses of the deed and his attorney's fees out of the two thousand dollars delivered in cash to Pedrosa. Prior to that day Fuertes had told Pedrosa that the expenses of the deed and the fees of Lic. R. Rodríguez Ema were forty-two dollars ($42). When the deed was signed and the money distributed it was not made clear which of the two notaries would receive the fees.

'VIII. Respondent charged Pedrosa usurious interest on a $2,000 loan, thereby committing usury, a misdemeanor (33 L.P.R.A. § 1751), and observing immoral conduct unbecoming an attorney at law.'

"As respects this charge, our conclusion is that the transaction culminated in the two-thousand-dollars ($2,000) loan which Fuertes made to Pedrosa, who would pay him three thousand dollars ($3,000) at the end of one year and a half, and if he failed to pay the principal of three thousand dollars within the said period of one year and a half, respondent would receive,

as he did, interest at the rate of nine per cent annually as of the expiration of the one-and-a-half-year period.

"According to respondent's version—which we have not accepted—it would still appear that he infringed the public policy of collecting in advance four hundred five dollars ($405) on a presumptive three-thousand-dollar ($3,000) loan. According to respondent, he delivered to Pedrosa two thousand five hundred ninety-five dollars ($2,595)[1] in order that the latter would pay three thousand dollars ($3,000) at the end of one year and a half. The interest received by respondent would exceed the fixed limit of nine dollars ($9) annually for every hundred dollars, or an interest of 10.4 per cent.

'IX. Respondent charged Pedrosa usurious interest on a $300 loan, thereby committing usury, a misdemeanor (33 (L.P.R.A. § 1751), and observing immoral conduct unbecoming an attorney at law.'

"In our opinion, the pertinent facts of this charge are the following:

"Six months after negotiating the loan referred to in the preceding charges Pedrosa needed more money and went to see Bernabé Martínez and both went to respondent's office. There they agreed that Fuertes would lend three hundred dollars ($300) to Pedrosa and that the latter would pay him four hundred fifty dollars ($450) at the end of one year.

"Martínez asked Guillermo Díaz Díaz to set up the third-mortgage deed, and on June 1, 1955 deed No. 9 of Voluntary Mortgage to Secure the Note to Bearer was executed before that notary. At the act there were present, besides the notary, the Pedrosa-Berríos spouses and Martínez only.

"That day Martínez delivered to Pedrosa three hundred dollars ($300) in cash, out of which the latter paid to the former his commission. The next day the broker paid some twenty-five dollars ($25) to Díaz Díaz for expenses and fees of the deed.

"The four hundred-fifty-dollar ($450) mortgage note to bearer was cancelled by deed on September 19 of that year. The only ones who appeared before Notary César Montilla were the Pedrosa-Berríos spouses and Martínez. In that act Pedrosa paid to the latter four hundred and fifty dollars ($450) and accrued interest up to that day in accordance with the note, but Martínez did not give him a receipt.

"With the exception of the time Pedrosa and Fuertes negotiated the loan, all subsequent steps were taken by Martínez and Pedrosa without the presence of respondent.

"(Footnote 1.)   Less $200 for the broker and $42 for the notary."

Complainant actually made no objection to those findings. He merely moved to strike out a certain sentence which in his opinion was a conclusion of law, alleging, however, that it was unnecessary for the purpose of considering proved the fourth charge since the evidence offered thereon was sufficient proof to establish the fact.

Respondent on his part formulated nine objections to the findings of the Master. The first is to the effect that in the findings on the first three charges it was set forth that the year in which mortgage deed No. 16, to secure the note to bearer, was executed had been 1961 instead of 1954, and that the year 1958 had been mentioned in the penultimate paragraph bearing on the sixth charge, the correct year being 1959. Complainant admitted the commission of those errors and acquiesced in the corresponding amendments, wherefore it is ordered that those dates be deemed to be amended as proposed by respondent in his first objection.  The other objections bear on the Master's weighing of the evidence offered by both parties, but they lack sufficient merits to consider them proper.

We have carefully read the transcript of the abundant oral evidence and have carefully studied the documentary evidence introduced by the parties and, in our opinion, the findings of fact made by the Master are amply supported by the evidence.  All the charges preferred against respondent were satisfactorily established.  In view of the nature of those charges, respondent is disbarred as attorney and notary in this Island and an order is entered to that effect.

Mr. Justice Serrano Geyls and Mr. Justice Blanco Lugo did not participate herein.